NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ISP ENVIRONMENTAL SERVICES, INC., | |
| Plaintiff, | CIVIL NO. 05-4249 (GEB) |
| v. | |
| THE CITY OF LINDEN, et al., | **MEMORANDUM OPINION** |
| Defendants. | |

**BROWN, Chief District Judge**

This matter comes before the Court upon Defendants Morris Companies, Morris Linden Associates, LLC, and Joseph D. Morris (hereinafter "Morris Defendants") Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [Docket Entry # 32] and Defendants City of Linden, John T. Gregorio, the Council of the City of Linden and the Union County Improvement Authority (hereinafter "City Defendants") Motion to Dismiss the Complaint in which they join Morris Defendants [Docket Entry # 33]. The Court, having read and fully considered all of the parties' submissions, has decided this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons discussed below, Defendants' Motions to Dismiss is GRANTED.

**I.     BACKGROUND**

Plaintiff ISP Environmental Services, Inc. (hereinafter "Plaintiff") filed a seven count Complaint on August 30, 2005. Count One alleged conspiracy to deprive Plaintiff of its property in violation of the Federal and State Constitutions against all Defendants; Count Two alleged

violations of the Eminent Domain Act of 1971, N.J.S.A. 20:3-5, et seq., against Defendants City of Linden, John T. Gregorio, the Council of the City of Linden, the Union County Improvement Authority and John Does; Count Three alleged violations of the Long Term Tax Exemption Law against all Defendants; Count Four alleged Equitable Estoppel and Breach of Contract against Defendants City of Linden, John T. Gregorio, the Council of the City of Linden, and John Does; Count Five alleged breach of implied covenant of good faith and fair dealing against Defendants City of Linden, John T. Gregorio, The Council of the City of Linden, and John Does; and Count Six alleged unjust enrichment against all Defendants.

On October 20, 2005, the Morris Defendants filed a Motion to Dismiss pursuant to F.R.C.P. 12(b)(1) and 12(b)(6). On October 22, 2005, the City Defendants filed a similar Motion to Dismiss. On August 23, 2006, the matter was reassigned to the undersigned. On September 26, 2006, the Court conducted a hearing regarding the pending motions. The Court concluded that Plaintiff's Complaint had failed to clearly demonstrate that a taking had occurred. On September 27, 2006, the Court issued an Order granting Defendants' Motion to Dismiss, and allowing Plaintiff to replead its action no later than ten days from the date of the Order's issuance.

On October 6, 2006, Plaintiff filed its Amended Complaint. Pursuant to the Amended Complaint, Count One now alleges a taking of Plaintiff's property in violation of the Fifth and Fourteenth Amendments of the United States Constitution as well as Article I, ¶ 12, § 20 and Article I, ¶ 1 of the New Jersey Constitution. Count Two now alleges inverse condemnation of Plaintiff's property, in violation of the aforementioned articles of the U.S. and New Jersey Constitutions; Count Three realleges conspiracy to deprive Plaintiff of its property in violation of

federal and state constitutions against all Defendants; Count Four realleges violations of the Eminent Domain Act of 1971, N.J.S.A. 20:3-5, et seq., against Morris Defendants; Count Five realleges violations of the Long Term Tax Exemption Law against all Defendants; Count Six realleges Equitable Estoppel and Breach of Contract against Defendants City of Linden, John T. Gregorio, the Council of the City of Linden, and John Does; Count Seven realleges breach of implied covenant of good faith and fair dealing against Defendants City of Linden, John T. Gregorio, The Council of the City of Linden, and John Does; and Count Eight realleges unjust enrichment against all Defendants.

The only other substantial alteration between Plaintiff's original Complaint and its Amended Complaint is a newly crafted ¶ 2, which states:

> The "taking" alleged above consists of conduct by the defendants which has destroyed ISP's rights to the use and enjoyment of its real property, placed a cloud on the title to the property and prevented ISP from selling or developing its real property. In addition, the defendants' have unlawfully taken ISP's property by substantially interfering with ISP's reasonable distinct investment-backed expectations and by depriving ISP of substantially all of the reasonable, economically beneficial and productive uses of its real property.

The factual allegations of Plaintiff's Amended Complaint (mirroring the original Complaint) are as follows: Plaintiff is a corporation of the State of Delaware and maintains its principal place of business in Wayne, New Jersey. (Amend. Compl., ¶ 10). Plaintiff is the owner of multiple properties in the State of New Jersey, including 143 acres in the City of Linden. (*Id.*). That acreage, hereinafter referred to as "the property," is located in an area zoned for warehousing and heavy industrial use and is located in a section of the city known as "Tremley Point." (*Id.*). The property has allegedly been owned by Plaintiff for "almost 100 years." (*Id.* at ¶ 19).

Plaintiff alleges that since at least the early 1990's, Plaintiff has been attempting to establish income-producing uses for the property. (*Id.* at ¶ 20). At a certain point, Plaintiff's allege that it had developed an idea to construct a hazardous waste incinerator facility, hereinafter referred to as "the incinerator project." (*Id.*). Plaintiff further asserts that in an effort to advance the incinerator project, Plaintiff sought and obtained various governmental approvals, including the New Jersey Hazardous Waste Facilities Siting Commission. (*Id.*). In the meantime, Plaintiff argues, the City of Linden opposed Plaintiff's efforts. That opposition included an appeal to the New Jersey Superior Court, Appellate Division, which was ultimately denied. (*Id.* at ¶ 21).

Plaintiff further alleges that in or about 1998, Plaintiff and the City of Linden entered into discussions with the intent to settle their dispute concerning the incinerator. (*Id.* at ¶ 22). On or about May 28, 1998, Plaintiff and the City of Linden allegedly entered into a "Standstill Agreement." (*Id.* at ¶ 23). The agreement stated, in sum and substance, that Plaintiff would cease their efforts to construct an incinerator on the property. (*Id.*). The City of Linden, in exchange for Plaintiff's agreement, allegedly promised to utilize the redevelopment laws of the State of New Jersey to assist Plaintiff in undertaking the redevelopment of its property. (*Id.*). That redevelopment was to take the form of warehouse distribution facilities, hereinafter referred to as "warehouses." (*Id.*).

Thereafter, Plaintiff allegedly invested significant time, effort and cost, in excess of $37 million, to remediate and develop the property, and to obtain access from the New Jersey Turnpike to Tremley Point. (*Id.* at ¶ 25).

In or about October, 1998, Plaintiff was allegedly approached by the Morris Defendants seeking to buy Plaintiff's property. Plaintiff rejected the offer as being "unreasonably low."

(*Id.* at ¶ 24(c)).

In or about November, 2001, consistent with the prior representations and promises of the municipal defendants and their designated special consultants, the City of Linden allegedly authorized its municipal planning board to conduct a preliminary investigation into whether the property should be declared to be in an area in need of redevelopment in accordance with Local Redevelopment and Housing Law N.J.S.A. 40A:12A-1, et seq. (*Id.* at ¶ 24(d)). At that time, Plaintiff was supposedly reassured by the City of Linden and its representing officials that Plaintiff would be permitted to serve as the redeveloper of its property. On January 16, 2002, by resolution, the City of Linden designated the property to be "an area in need of redevelopment." (*Id.* at ¶ 24(e)). In February, 2002, the City of Linden allegedly passed an ordinance approving a redevelopment plan for the property. (*Id.*). In reliance on the approved ordinance, Plaintiff allegedly retained contractors to demolish existing buildings on the property and to prepare the property for development, including an effort to start remediation of the property and to obtain New Jersey Turnpike access to the area. (*Id.* at ¶¶ 24(f) and (g)). In August, 2003, the City of Linden adopted an amended redevelopment plan for the property. (*Id.* at ¶ 24(g)). This plan supposedly recognized Plaintiff's interest in the property by providing that Plaintiff "had the right to develop or sell its property." (*Id.*).

Plaintiff further alleges that at no time did the City Defendants indicate that Plaintiff's "plans and efforts concerning the redevelopment . . . were unacceptable. To the contrary, defendant Gregorio [the then mayor of the City of Linden] continually encouraged [Plaintiff] and represented that he was supportive of [Plaintiff's] efforts and that he was aware of its substantial investment in the redevelopment of its property." (*Id.* at ¶ 24(h)).

Plaintiff asserts, however, that on April 14, 2004, May 19, 2004, and December 15, 2005, the City of Linden through its representatives appointed, via resolutions, the Morris Defendants as the redevelopers of Plaintiff's property, in violation, Plaintiff's assert, of the prior agreement with the City Defendants and the August 19, 2003 ordinance. (*Id.* at ¶¶ 24(i) and (j)). The May 19, 2004, resolution prohibited the Morris Defendants from executing a redevelopment agreement after it failed to do so within the required time. (*Id.* at ¶ 24(k)). However, subsequent to May 19, 2004, Plaintiff claims that it "learned" that the city had designated the Morris Defendants as the redeveloper of Plaintiff's property as well as an additional property owned by another company in Linden, "subject to Morris diligently pursuing negotiated contracts with both [Plaintiff] and [the joined property] within 180 days and executing a redevelopment agreement with Linden within 90 days . . ." (*Id.* at ¶ 25(l)).

Plaintiff further asserts that upon learning of the designation of Morris as the redeveloper of Plaintiff's property, a representative approached then Mayor Gregorio and asked why said designation had occurred. Defendant Gregorio responded that Plaintiff "should not worry" and that the Morris Defendants would only be the redeveloper if they "purchased" the property from Plaintiff for an "acceptable" price. (*Id.* at ¶ 24(m)). Plaintiff further asserts that during the 180 day period, Defendant Gregorio informed a representative of Plaintiff that the City Defendants would not renew the designation of the Morris Defendants as redeveloper after the expiration of the 180 day period. (*Id.* at ¶ 24(m)).

In later meetings and conversations between Defendant Gregorio and representatives of Plaintiff, Defendant Gregorio allegedly stated that the property would not be condemned. (*Id.* at ¶¶ 24(n)(o)). Thereafter, on September 22, 2004, by resolution, the City Defendants allegedly

endeavored to extend by 60 days the time in which the Morris Defendants could execute a redevelopment agreement with the City Defendants, with an additional 30 day extension to be invoked by Defendant Gregorio if he so chose. (*Id.* at ¶ 24(g)).

By ordinance dated October 19, 2004, the City Defendants adopted an ordinance which allegedly permitted Morris Defendants to be the redeveloper for both Plaintiff's property as well as the additional company's land. (*Id.* at ¶ 24(r)). The ordinance further allegedly stated that the it " . . .shall supersede all previously adopted redevelopment plans governing the . . . ISP redevelopment area, which hereafter shall be of no force or effect" which Plaintiff asserts, effectively eliminated the language of previous ordinances which recognized and confirmed Plaintiff's development rights. (*Id.*). Thereafter, in a letter by Defendant Gregorio, the deadline for the Morris Defendants to execute a redevelopment agreement was extended until December 21, 2004. (*Id.* at ¶ 24(s)).

On December 15, 2004, the City Defendants allegedly adopted a resolution authorizing the execution of a redevelopment agreement that appointed the Morris Defendants as the redeveloper and required execution of the redevelopment agreement within 30 days thereafter. (*Id.* at ¶ 24(t)). On or about January 4, 2005, the City Defendants allegedly executed a redevelopment agreement with the Morris Defendants. (*Id.* at ¶ 24(u)). According to Plaintiff's Amended Complaint, the Morris Defendants had an obligation, pursuant to the terms of the January 4, 2005, redevelopment agreement, to seek to negotiate in good faith the purchase of Plaintiff's property. (*Id.*). The January 4, 2005, redevelopment agreement further allegedly provided that the Morris Defendants were permitted to disapprove any appraisal conducted by the City Defendants. In such an instance, the Morris Defendants were permitted to prepare their own

appraisal, and both appraisals were to be submitted to a third-party appraiser which was to establish the value and set the offer price. (*Id.* at ¶ 24(v)). The January 4, 2005, redevelopment agreement also allegedly provided that the Morris Defendants had the right to seek to delete from acquisition any parcels of the property which was determined "fiscally or otherwise unfeasible . . ." and that the City Defendants "not unreasonably refuse to consent to such modifications." (*Id.* at ¶ 24(w)). Further, the January 4, 2005, redevelopment agreement allegedly permitted the Morris Defendants the right to pick which portions of Plaintiff's property will be redeveloped. (*Id.* at ¶ 24(y)).

On January 14, 2005, Plaintiff alleges that counsel for the Morris Defendants sent a two-page letter to the City Defendants. (*Id.* at ¶ 24(z)). The contents of the letter "incorrectly" included a statement that "'negotiations for the acquisition of the [Plaintiff] parcels had been and would continue to be unsuccessful and requested the commencement of eminent domain proceedings." (*Id.*).

The Amended Complaint additionally asserts that on or about March 16, 2005, Defendant City of Linden passed a resolution directing Defendant Gregorio and " . . . other designated officials of the City" to commence negotiations for the purchase of Plaintiff's property. Plaintiff's allege that the resolution further provided that if negotiations failed, Defendant Gregorio and the other designated officials were to commence eminent domain proceedings against the property. (*Id.* at ¶ 24(aa)).

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the Complaint as true, and viewing them in the

light most favorable to Plaintiff, Plaintiff is not entitled to relief. *Oran v. Stafford*, 226 F.3d 275, 279 (3d Cir. 2000); *Langford v. City of Atl. City*, 235 F.3d 845, 850 (3d Cir. 2000); *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir. 1986). The Court may not dismiss the Complaint unless Plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985), *cert. denied*, 474 U.S. 935 (1985). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Jackson v. Birmingham Bd. of Educ.*, 125 S. Ct. 1497, 1510 (2005) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

  Under Rule 12(b)(6), the Court must "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff. [The motion can be granted] only if no relief could be granted under any set of facts that could be proved." *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991) (citing *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1394-95 (3d Cir. 1991)); *see also Langford*, 235 F.3d at 850; *Dykes v. SE. Pa. Transp. Auth.*, 68 F.3d 1564, 1565, n.1 (3d Cir. 1995), *cert. denied*, 517 U.S. 1142 (1996); *Piecknick v. Commw. of Pa.*, 36 F.3d 1250, 1255 (3d Cir. 1994); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). A complaint may be dismissed for failure to state a claim where it appears beyond any doubt "that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

  A complaint should not be dismissed unless it appears beyond doubt that "the facts alleged in the complaint, even if true, fail to support the claim." *Ransom* v. *Marrazzo*, 848 F.2d

398, 401 (3d Cir. 1988).  Legal conclusions made in the guise of factual allegations, however, are given no presumption of truthfulness.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ( "[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").

The standard for Rule 12(b)(1) for the instant action's purposes is set forth in *Pinewood Estates of Michigan v. Barnegat Township Leveling Board*, 898 F.2d 347, 350, n.4 (3d Cir. 1990).  That standard closely mirrors the 12(b)(6) standard as the Court must accept as true all factual allegations contained in the Complaint, and where the Court may dismiss the Complaint where no set of facts consistent with the allegations could vest federal question jurisdiction in federal district court.

### III.   DISCUSSION

Defendants' joint Motions to Dismiss seeks to have this Court dismiss Counts One and Three of Plaintiff's Amended Complaint under Rule 12(b)(6), and the remaining state law claims for lack of subject matter jurisdiction under Rule 12(b)(1).  Specifically, Defendants allege that only two counts of Plaintiff's Amended Complaint raise a federal question, Counts One and Three.  Defendants further allege that both counts fail to state a claim upon which relief can be granted, in accordance with Rule 12(b)(6).  Therefore, Defendants assert that Counts One and Three must be dismissed.  Further, assuming those counts are dismissed, Defendants assert that this Court should not exercise supplemental jurisdiction over the state law claims because the litigation is in its early stages, pursuant to Rule 12(b)(1).

In support of their Rule 12(b)(6) motion, Defendants argue that Plaintiff's Complaint has failed to demonstrate that its property has been taken without just compensation.  Further,

because Plaintiff fails to demonstrate a taking, the conspiracy to take allegation in Count Three of Plaintiff's Amended Complaint must also fail, Defendants allege. Additionally, Defendants assert that even if this Court found that Plaintiff had sufficiently plead a taking, said claim is not ripe for adjudication as Plaintiff must first seek compensation from the City of Linden.

### A.     Is The Taking Claim Ripe?

Plaintiff asserts a taking as well as a conspiracy to take. Defendants assert that Plaintiff's takings claims are not ripe "because plaintiff has neither sought nor obtained a state court final determination on the implication of the redevelopment plan on plaintiff's property." (Morris Def. Reply Brief, p. 7). Plaintiff counters that the matter is properly before this Court because Plaintiff is alleging that the taking is unlawful, and as such, Plaintiff is not required to pursue just compensation. (Plt. Opp., p. 30).

The Fifth Amendment, made applicable to state and local governments under the Fourteenth Amendment, proscribes the taking of private property for public use without just compensation. *See Cowell v. Palmer Township*, 263 F.3d 286, 290 (3d Cir. 2001). The Fifth Amendment does not require that compensation be paid prior or even contemporaneous with the taking, only that "a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking." *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). Therefore, if a plaintiff's claims are premised on failure to receive just compensation, and plaintiff fails to avail himself of state court remedies before filing in federal court, such claims will not be considered ripe. "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation. *Id.* at

195.

Further, claims that are based not on lack of just compensation, but rather on an unlawful taking, and which have not been previously brought before the state court are likewise premature. *See Taylor Investment Ltd. v. Upper Darby Township*, 983 F.2d 1285, 1292-95 (3d Cir. 1993) (applying *Williamson* to substantive due process, procedural due process and equal protection claims); *see also Ash v. Redevelopment Authority of Philadelphia*, 143 Fed.Appx. 439 (3d Cir. 2005); *Williamson* at 186, 194 (holding that taking claims are not ripe for federal review until there was a *final* administrative decision *and* a condemnation); *San Remo Hotel v. City and County of San Francisco, Calif.*, 125 U.S. 2491, 2506-07 (2005) ("a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue" quoting *Williamson*)(" . . . there is scant precedent for the litigation in federal district court of claims that a state agency has taken property in violation of the Fifth Amendment Takings Clause.  To the contrary, most of the cases in our takings jurisprudence, including nearly all of the cases on which petitioners rely, came to us on writs of certiorari from state courts of last resort").

Here, Plaintiff has moved in federal district court for relief.  Plaintiff has not filed in state court.  Although Plaintiff sets forth an unlawful taking claim, not a claim for just compensation, Plaintiff is nevertheless required to file in state court first.  It is of no moment, under the current jurisprudence regarding this area of law, that there is a federal question presented.  As stated in *San Remo*, "this is not the only area of law in which we have recognized limits to plaintiffs' ability to press their federal claims in federal courts."  Further, "[s]tate courts are fully competent

to adjudicate constitutional challenges to local land-use decisions. Indeed, state courts undoubtedly have more experience than federal courts do in resolving the complex factual, technical, and legal questions related to zoning and land-use regulations." *Id.* at 2507.

Therefore, the Court concludes that Plaintiff's claims are not ripe. Plaintiff's Amended Complaint shall be dismissed.[1]

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss the Amended Complaint is GRANTED.

                                        s/Garrett E. Brown, Jr.
                                        **GARRETT E. BROWN, JR.**
                                        **CHIEF UNITED STATES DISTRICT JUDGE**

Dated: May   3  , 2007

---

[1] The Court notes that Defendants had asserted the ripeness claim as an alternative argument to the base argument that there was no taking. However, it is well settled that procedural issues such as standing, mootness and ripeness are to be determined prior to any substantive analysis. *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001); *Hurley v. Columbia Cas. Co.*, 976 F.Supp. 268, 272 (D.Del. 1997); *Barmo v. Reno*, 899 F.Supp. 1375, 1379 (E.D.Pa. 1995).